**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

SALEM HOMES OF FLORIDA, INC.,      )
                                     )
           Plaintiff,       )
                                     )
           v.                 )           1:18cv290
                                     )
RES-CARE, INC.,                )
                                     )
           Defendant.      )

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on the Motion to Transfer (Docket Entry 16) (the "Transfer Motion") filed by Res-Care, Inc. (the "Defendant") "[p]ursuant to 28 U.S.C. § 1404(a)" (id. at 1).[1] Through the Transfer Motion, Defendant seeks "entry of an Order transferring this case to the Middle District of Florida" (id.), as, in Defendant's view, "the Middle District of Florida has by far the most significant connection to this lawsuit" (id. at 2). Because, as explained below, Defendant has not shown that venue exists in the Middle District of Florida, the Court will deny the Transfer Motion.[2]

---

    1  Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

    2  As the Transfer Motion involves a non-dispositive matter, the undersigned United States Magistrate Judge will issue an order rather than a recommendation on this motion. See, e.g., IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012) (explaining that "a Magistrate Judge is ordinarily authorized to issue an order resolving a non-dispositive question such as a motion to transfer venue under section 1404(a)"); Brown v. Wells Fargo, N/A, No. 1:11cv686, 463 B.R. 332, 334 n.1, 2011 WL 5325599, at *1 n.1 (M.D.N.C. Nov. 6, 2011) (collecting cases).

## BACKGROUND

In February 2018, Salem Homes of Florida, Inc. (the "Plaintiff") filed a lawsuit against Defendant in the North Carolina General Court of Justice for Forsyth County, Superior Court Division. (See Docket Entry 3 (the "Complaint") at 1.) According to the Complaint, Defendant (i) breached an "Amended and Restated Management Agreement dated December 1, 2013" (the "Management Agreement") (id., ¶ 4), between the parties regarding the management of certain residential facilities for developmentally disabled adults in Florida (see id., ¶¶ 3-5, 7, 8, 11, 12); (ii) failed to provide an "accounting of all funds and assets controlled by [Defendant] under the Management Agreement" (id., ¶ 14; see id., ¶ 9); and (iii) "converted assets which properly belong to [Plaintiff] to its own use" (id., ¶ 16; see id., ¶¶ 6, 8). In April 2018, "pursuant to 28 U.S.C. §§ 1441 and 1446" (Docket Entry 1 at 1), Defendant removed the lawsuit to this Court on the basis of diversity jurisdiction. (See id. at 2, 3, 5.) Thereafter, Defendant moved to transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a), contending that such transfer "would serve the convenience of the parties and witnesses, as well as the interest of justice." (Docket Entry 16 at 1.) Plaintiff opposes the transfer request. (See generally Docket Entry 21.)

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C.A. § 1404(a).   "The moving party bears the burden of establishing that transfer to another venue is proper."   IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012) (internal quotation marks omitted); see also Arabian v. Bowen, No. 91-1720, 966 F.2d 1441 (table), 1992 WL 154026, at *1 (4th Cir. July 7, 1992) ("The defendant bears a heavy burden of showing that the balance of interests weighs strongly in his favor in a [Section 1404(a)] motion to transfer.").   In resolving a contested motion to transfer, "the Court must first find that the action could have been originally brought in the transferee court." Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007).   If so, the Court then engages in a multifactored analysis of certain public-interest and private-interest considerations, "weigh[ing] the relevant factors and decid[ing] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice,'" Atlantic Marine Constr. Co. v. United States Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 62–63 (2013).  See id. at 62 n.6 (identifying relevant factors).

According to Defendant, Plaintiff "could have brought its claims in the Middle District of Florida because the district court there would appear to have both subject matter jurisdiction over [Plaintiff's] claims and personal jurisdiction over [Defendant], and because venue would be proper."  (Docket Entry 17 at 5 (citing Docket Entry 14 at 19-20).)[3]  In particular, Defendant maintains that the Middle District of Florida possesses diversity jurisdiction over this lawsuit (see id.) and that "specific jurisdiction over [Defendant] could be exercised in Florida" (id. (citing Docket Entry 3, ¶¶ 3-5)).  Defendant further maintains that venue lies in the Middle District of Florida

> because the vast majority of the events giving rise to this dispute occurred in Florida.  Indeed, the group homes that were operated under the Management Agreement are all located in Florida — and [Plaintiff's] lawsuit is premised on alleged breaches of the Management Agreement and other conduct by [Defendant] that could have occurred only in Florida.

(Docket Entry 14 at 20 (citing Docket Entry 3, ¶¶ 3, 4, 7(l), (m), (n), (r)).)

---

3  Rather than clearly contesting or conceding its ability to have brought the lawsuit in the Middle District of Florida, Plaintiff equivocates on that issue and instead focuses on the balance of factors regarding transfer. (See, e.g., Docket Entry 21 at 4 ("Although [Plaintiff] does not necessarily dispute that this action potentially could have been brought in the Middle District of Florida, for the reasons explained below, each of the four factors identified above counsels in favor of allowing this action to proceed in this Court.  Thus, the Court should deny [the Transfer] Motion.").)  Plaintiff's equivocation in this regard, however, does not relieve Defendant of its burden of establishing that venue exists for this action in the Middle District of Florida.

As relevant to the Transfer Motion, the federal venue statute authorizes bringing a civil action in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). It further provides that, for venue purposes, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the [C]ourt's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Finally, it clarifies that, in States — like Florida, see 28 U.S.C. § 89 — with multiple judicial districts, a corporation "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

Because Defendant constitutes the only defendant (see Docket Entry 3), either Section 1391(b)(1) or Section 1391(b)(2) could support venue for this action. Notably, however, Florida possesses three different districts. See 28 U.S.C. § 89 ("Florida is divided into three judicial districts to be known as the Northern, Middle, and Southern Districts of Florida."). As such, Defendant's assertion that "the vast majority of the events giving rise to this

dispute occurred in Florida" (Docket Entry 14 at 20), thereby giving Florida "specific jurisdiction" over Defendant regarding Plaintiff's claims (Docket Entry 17 at 5), fails to establish that venue lies in the <u>Middle</u> District of Florida.

Nor do the Complaint and the affidavit that Plaintiff relies on in opposing the Transfer Motion provide sufficient detail regarding the Floridian locations involved in the instant dispute for purposes of a venue determination. (<u>See</u> Docket Entries 3, 20-1.) The Management Agreement similarly offers scant detail regarding any Floridian locations, aside from referencing Defendant's "management and operation of the Gainesville group homes in Florida and the Facilities for the prior provider" as sources (among others) of Defendant's expertise "in the provision of residential service for the developmentally disabled." (Docket Entry 3 at 9.) Defendant's affidavit in support of its Transfer Motion likewise identifies only Gainesville as the place in Florida where the events underlying Plaintiff's Complaint occurred. (<u>See</u> <u>generally</u> Docket Entry 14-1.) More specifically, Defendant's Eastern Region President of Residential Services avers that:

> 10. On isolated occasions during the course of the parties' relationship, their representatives, including [Plaintiff's affiant], met face-to-face to discuss operational matters in <u>Gainesville, Florida</u>, Louisville, Kentucky, and Winston-Salem, North Carolina.

> 11. At all relevant times, [Defendant's] core office for its management of the Facilities was located in <u>Gainesville, Florida</u>. The <u>Gainesville</u> office serves as the centralized management hub for the Facilities, and

was the regular place of business for [Defendant's] associated managerial staff, including an Executive Director, Business Manager, Human Resources Director, Office Coordinator, Nursing Manager, Qualified Intellectual Disability Professional, Residential Director and Program Manager.

12. My understanding is that [Defendant's] managerial staff was hired by its successor in interest, and are still involved in the management of the Facilities from the core office in Gainesville, Florida.

13. Relevant documents and other records related to the operation of the Facilities, including all financial records, are maintained in either Gainesville, Florida or Louisville, Kentucky.

(Id. at 2-3 (emphasis added).)[4]

Gainesville, Florida, lies in the Northern District of Florida. See, e.g., 28 U.S.C. § 89(a) (specifying, inter alia, (1) that "[t]he Northern District comprises the counties of[, inter alia,] Alachua," which includes Gainesville, and (2) that "[c]ourt for the Northern District shall be held at Gainesville"). Accordingly, at best the current record reflects that proper venue rests in the Northern, not Middle, District of Florida. Defendant has therefore failed to establish that "[Plaintiff] could have brought this action in the Middle District of Florida" (Docket

---

4 Defendant further asserts that the parties entered into two separate agreements that contain forum selection clauses for, respectively, Duval County and Jacksonville, Florida (see Docket Entry 17 at 3), but does not contend that those forum selection clauses govern Plaintiff's claims (see id. at 10). (See also id. at 5 (raising no argument concerning those agreements in contending that "[Plaintiff] could have brought this action in the Middle District of Florida"); Docket Entry 14 at 19-20 (same re venue).)

7

Entry 17 at 5), as Defendant concedes it must show to prevail on its Transfer Motion (see id. at 4-5).

<strong><u>CONCLUSION</u></strong>

Defendant has not shown the appropriateness of transfer to the Middle District of Florida under Section 1404(a).

**IT IS THEREFORE ORDERED** that the Transfer Motion (Docket Entry 16) is **DENIED.**

This 9th day of November, 2018.

              /s/ L. Patrick Auld
         **L. Patrick Auld**
     **United States Magistrate Judge**