IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SALEM HOMES OF FLORIDA, INC., )
                               )
        Plaintiff,             )
                               )
    v.                         )    1:18CV290
                               )
RES-CARE, INC.,                )
                               )
        Defendant.             )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before this court for review of the Magistrate Judge's Memorandum Opinion and Order, (the "Order" (Doc. 24)), in accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). In the Order, the Magistrate Judge denied Defendant Res-Care, Inc.'s motion to transfer this case, (Doc. 16), to the Middle District of Florida. The Magistrate Judge's Order and findings were not clearly erroneous, based on the arguments presented to the Magistrate Judge. This court finds that the case must be transferred based on a new argument submitted only to this court even though, as will be explained herein, Defendant's failure to raise that argument before the Magistrate Judge was entirely improper. Therefore, this court will vacate the Magistrate Judge's Order, grant Defendant's

motion to transfer, and transfer this case to the Middle District of Florida.

I.      **PROCEDURAL HISTORY**

Plaintiff Salem Homes of Florida, Inc., originally filed a complaint in the Forsyth County Superior Court, alleging that Defendant breached the terms of an Amended and Restated Management Agreement (the "Management Agreement") between the parties and was liable to Plaintiff for breach of contract, an accounting, and conversion. (Doc. 1-2.) Defendant removed this matter to the Middle District of North Carolina as a diversity jurisdiction case under 28 U.S.C. §§ 1441 and 1446. (Doc. 1.)

Defendant then simultaneously moved to dismiss for failure to state a claim, (Doc. 13), and to transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). (Doc. 16.) Defendant filed a memorandum in support of its motion to transfer, (Doc. 17); Plaintiff responded opposing the motion, (Doc. 21); and Defendant replied. (Doc. 22.) The Magistrate Judge then issued a Memorandum Opinion and Order denying Defendant's motion to transfer. (See Order (Doc. 24).) Defendant objected to the Magistrate Judge's Order, (Def.'s Obj. to Order ("Def.'s Objs.") (Doc. 25)), and Plaintiff responded, (Pl.'s Resp. in Opp'n to Def.'s Objs. to Order ("Pl.'s Resp.") (Doc.

26).) This court ordered supplemental briefing on the issue of whether the forum selection clause, which was not raised as a basis for transfer in front of the Magistrate Judge, nevertheless requires that this action be transferred. (See Doc. 27.) Defendant, (Doc. 28), and Plaintiff, (Pl.'s Supp. Resp. in Opp'n to Def.'s Obj. ("Pl.'s Supp. Resp.") (Doc. 29)), each submitted a supplemental brief addressing this issue.

## II. **FACTUAL BACKGROUND**

Plaintiff is a Florida corporation whose principal place of business is Winston-Salem, North Carolina. (Complaint ("Compl.") (Doc. 3) ¶ 1.) Defendant is a Kentucky corporation whose principal place of business is Louisville, Kentucky. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Doc. 14) at 2.)[1][2]

Plaintiff's claims relate to a business arrangement in which Defendant provided management services at residential

---

[1] This court will cite to Defendant's memorandum supporting the motion to dismiss for factual assertions, as this memorandum contains detailed background information and exhibits which are incorporated by reference in Defendant's memorandum supporting the motion to transfer.

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

facilities for developmentally-disabled adults in Florida leased and operated by Plaintiff. (Compl. (Doc. 3) ¶¶ 3-4.) Plaintiff paid Defendant a monthly management fee per facility for these services. (Id., Management Agreement, Ex. A at 20-21.)

As explicitly contemplated by the Management Agreement, (Id., Ex. A at 26), the parties contemporaneously executed a Security Agreement. (See Def.'s Mem., Affidavit of Dennis Roberts, Security Agreement, Ex. B (Doc. 14-1) at 9-19.) Under the Security Agreement, Plaintiff granted Defendant a first-priority security interest in certain collateral, including accounts receivable from the managed facilities, to secure Plaintiff's payment of the management fee. (Id. at 9-10.) Plaintiff also executed a promissory note in favor of Defendant, (id., Promissory Note, Ex. A at 5-8), due and payable upon Plaintiff's breach of the Security Agreement.

The Management Agreement is governed by Florida law but silent regarding venue. (Compl., Management Agreement, Ex. A (Doc. 3) at 39.) The Security Agreement contains the following provision:

> Each party hereto hereby irrevocably submits to the exclusive jurisdiction of any United States federal or Florida state court sitting in Jacksonville, Florida in any action or proceeding arising out of or relating to this agreement or the note and each such party hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and

> determined in any such court and irrevocably waives
> any objection it may now or hereafter have as to the
> venue of any such suit, action or proceeding brought
> in such a court or that such court is an inconvenient
> forum.

(Def.'s Mem., Security Agreement, Ex. B (Doc. 14-1) at 17.)

Defendant managed Plaintiff's facilities from a corporate office in Gainesville, Florida, (Def.'s Mem. (Doc. 14) at 3), which is in the Northern District of Florida. See 28 U.S.C. § 89(a). Jacksonville is located in the Middle District of Florida. See 28 U.S.C. § 89(b). Thirteen of the fourteen facilities subject to the Management Agreement are located in the Middle District of Florida. (See Def.'s Objs., Supplemental Affidavit of Robert Barnes ("Barnes Aff."), Ex. A (Doc. 25-1) at 6.) However, neither party provided information about facility locations prior to the Magistrate Judge's Order denying Defendant's motion to transfer.

## III. STANDARD OF REVIEW

Because Defendant's motion to transfer is not dispositive of the case, the Magistrate Judge was authorized to rule on the motion and this court reviews only to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also Stonecrest Partners, LLC v. Bank of Hampton Rds., 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011) (reviewing a magistrate

judge's non-dispositive pre-trial order under the clearly erroneous standard). The parties agree that a "clearly erroneous" standard of review applies in this instance. (See Def.'s Objs. (Doc. 25) at 6; Pl.'s Resp. (Doc. 26) at 3.) "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) (internal quotations omitted).

However, even under the clearly erroneous standard, "a magistrate's decision should not be disturbed on the basis of arguments not presented to him." Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship, 784 F. Supp. 1223, 1228 (E.D. Va. 1991); see also Greenhow v. Sec'y of Health & Human Servs., 863 F.2d 633, 638 (9th Cir. 1988) ("We do not believe that the Magistrates Act was intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."), overruled on other grounds by United States v. Hardesty, 977 F.2d 1347 (9th Cir. 1992).

In this case, Defendant did not initially argue that a forum selection clause controlled or otherwise affected the first step of the venue determination — that is, whether Plaintiff could have filed this action in the Middle District of

Florida. (See Order (Doc. 24) at 3-4.) Instead, Defendant's argument on this point reads as follows:

> The first step in analyzing a request for transfer pursuant [to] § 1404(a) is for the Court to determine whether this action could have been brought in the transfer forum. Salem Florida could have brought its claims in the Middle District of Florida because the district court there would appear to have both subject matter jurisdiction over Salem Florida's claims and personal jurisdiction over ResCare, and because venue would be proper.
>
> Like this Court, the Middle District of Florida would have diversity jurisdiction over Salem Florida's claims. . . . Moreover, specific jurisdiction over ResCare could be exercised in Florida. Accordingly, Salem Florida could have brought this action in the Middle District of Florida.

(Doc. 17 at 5 (citations omitted).) Defendant does not rely upon the forum selection clause in the Security Agreement as a basis for transferring venue. Nor is the forum selection clause mentioned at all in the portion of Defendant's memorandum in support of its motion to dismiss that is incorporated in the motion to transfer memorandum. That section merely asserts that venue is not proper in the Middle District of North Carolina and that venue is proper in the Middle District of Florida because "the vast majority of the events giving rise to this dispute occurred in Florida" and because the parties are subject to personal jurisdiction there. (Defs.' Mem. (Doc. 14) at 19-20.)

The Magistrate Judge issued a thorough and well-reasoned Memorandum Opinion and, in fact, specifically noted Defendant's failure to raise the forum selection clause. The Magistrate Judge observed that "Defendant further asserts that the parties entered into two separate agreements that contain forum selection clauses for, respectively, Duval County and Jacksonville, Florida, but does not contend that those forum selection clauses govern Plaintiff's claims." (Order (Doc. 24) at 7 n.4) (citations omitted).)

Nevertheless, after the Magistrate Judge issued his Order denying Defendant's motion to transfer, Defendant brought forth a new argument; that is, Defendant asserted that this action could have been brought in the Middle District of Florida pursuant to the forum selection clause in the related Security Agreement. (See Def.'s Objs. (Doc. 25) at 1-2, 7-9.) Defendant now argues that "the record makes clear that the purported claims alleged by Salem Florida are plainly related to the Security Agreement between the parties — and thus could have (and should have) been brought in the Middle District of Florida." (Id. at 1.) Defendant suggests, by citing to its own memorandum in support of its motion to transfer and "the factual background section of ResCare's Memorandum in Support of Motion to Dismiss," (id. at 2.), that the forum selection clause

-8-

argument was somehow raised by Defendant's mere recitation of the fact that the Security Agreement contains a forum selection clause. (See Defs.' Mem. (Doc. 14) at 6.) This factual recitation, however, was woefully inadequate to raise the issue before the Magistrate Judge, especially because Defendant did not even reference the clause once in its actual analysis of proper venue in the Middle District of Florida. (See id. at 20.)

This court finds Defendant's post-hoc attempt to rationalize its inexplicable failure to raise the forum selection clause argument before the Magistrate Judge to be entirely disingenuous. Even at this point, Defendant refuses to concede that it failed to raise the argument and instead stubbornly insists that application of the forum selection clause was warranted "based on the record before the Magistrate Judge." (Doc. 28 at 4.) To the extent that Defendant seeks to place blame on the Magistrate Judge for failing to address an argument that was not properly raised, this court is thoroughly dismayed by such conduct.

The clearly erroneous standard of review does not "permit[] a 'second shot' based on new arguments," Claytor v. Comput. Assocs. Int'l, Inc., 211 F.R.D. 665, 667 (D. Kan. 2003), which is precisely what Defendant seeks to do with its objections. This court has no difficulty concluding that Defendant's

argument that the forum selection clause requires transfer is a completely new argument. Because this issue was not raised before the Magistrate Judge, "[i]t is improper, therefore, for the defendant to raise this issue for the first time as part of [its] Rule 72 motion." Proffit v. Veneman, No. CIV.A. 5:01CV00067, 2002 WL 1758232, at *3 (W.D. Va. July 15, 2002). This court finds that the Magistrate Judge's Order, on the record before that court, is neither clearly erroneous nor contrary to law. The more difficult question is whether this court should still consider the new argument raised by Defendant.

Plaintiff has objected to this court's consideration of new arguments that were not before the Magistrate Judge. (See Pl.'s Resp. (Doc. 26) at 2; Pl.'s Supp. Resp. (Doc. 29) at 2.) Nevertheless, Plaintiff largely acknowledges that consideration of the forum selection clause would provide proper jurisdiction in the Middle District of Florida and support the motion to transfer. (See Pl.'s Supp. Resp. (Doc. 29) at 3 ("[T]he cases the Court has directed Salem to consider would, candidly, present challenges to Salem's position." (citations omitted).) Plaintiff does, however, seek to distinguish this case from others applying forum selection clauses to incidental or related agreements by arguing that (1) this case does not involve

arbitration, and (2) the Management Agreement at issue here "is a fully formed, standalone agreement with all the standard provisions expected of a typical independent agreement." (Id. at 3-4.)

This court appreciates Plaintiff's candor. Frankly, this court finds it difficult to penalize Plaintiff for largely conceding this point, especially given the troubling conduct by Defendant described above. However, the Fourth Circuit has consistently expressed a "strong preference that cases be decided on their merits" rather than dismissed on procedural or technical grounds. Choice Hotels Int'l, Inc. v. Goodwin and Boone, 11 F.3d 469, 472 (4th Cir. 1993); see also Reizakis v. Loy, 490 F.2d 1132, 1135 (4th Cir. 1974) ("Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits."). In light of this well-established judicial preference, this court finds that the interests of justice are best served by considering the forum selection clause argument on its merits rather than finding that Defendant has waived the argument.

## IV. ANALYSIS

### A. Proper Venue in the Middle District of Florida

The Magistrate Judge correctly observed that the initial question under 28 U.S.C. § 1404(a) is whether venue would have

-11-

been proper if the action was initially brought in the transferee court. (Order (Doc. 24) at 3.) Defendant, as the moving party, bears the burden of making this showing. See Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp. of Am., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990). Further, the Magistrate Judge properly concluded that the record lacked "sufficient detail regarding the Floridian locations involved in the instant dispute for purposes of a venue determination." (Order (Doc. 24) at 6.) While Defendant has since clarified that thirteen of the fourteen facilities are located in the Middle District of Florida, (Def.'s Objs., Barnes Aff., Ex. A (Doc. 25-1) at 6), this information was not available to the Magistrate Judge and is not a proper basis to set aside the Order under this court's deferential standard of review. See Haines v. Liggett Grp. Inc., 975 F.2d 81, 91-92 (3d Cir. 1992) (stating that, in reviewing a non-dispositive order, a district court "is not permitted to receive further evidence" beyond what was in the record considered by the magistrate judge).

However, this court finds that the forum selection clause in the Security Agreement provides a basis for jurisdiction. See 28 U.S.C. § 1404(a) (stating that a case may also be transferred "to any district or division to which all parties have

consented"). The forum selection clause is a binding agreement by the parties to submit to the jurisdiction of a federal or state court in Jacksonville, Florida (in the Middle District) to adjudicate "any action or proceeding arising out of or relating to" the Security Agreement. (Def.'s Mem., Security Agreement, Ex. B (Doc. 14-1) at 17.) The parties further agree to waive any objection to proper venue in such a court. (Id.)

Forum selection clauses are generally enforceable and binding on the parties. See, e.g., Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) (observing that the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system"); Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (stating that "the Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity," except when they appear "unreasonable under the circumstances"). Courts may disregard a forum selection clause only in rare circumstances such as fraud, "grave inconvenience or unfairness," total lack of a remedy in the transferee forum, or serious public policy concerns. Allen, 94 F.3d at 928.

Here, neither party asserts that the forum selection clause in the Security Agreement is invalid or unenforceable. The sole

issue, raised only in response to the Magistrate Judge's Order, is whether the Security Agreement provision applies to the instant dispute. (See Def.'s Objs. (Doc. 25) at 5-6; Pl.'s Resp (Doc. 26) at 4-5.)[3] While Defendant argues that Plaintiff's claims are related to the Security Agreement and thus should be subject to the forum selection clause, Plaintiff emphasizes that the Security Agreement is "a separate agreement [and] not the breached agreement at the heart of this litigation." (Pl.'s Resp. (Doc. 26) at 4.)

A forum selection clause in one agreement that specifies the venue for adjudicating any dispute "arising out of or relating to" that agreement applies to breaches of other incidental or connected agreements. See Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550-51 (4th Cir. 2006) (finding that, because "[t]he Safety Agreement was executed under the Basic Agreement and contains none of the terms that

---

[3] Plaintiff also notes in earlier briefing that the presence of a forum selection clause does "not foreclose this Court from adjudicating those claims, as the venue prescribed by a forum selection clause can easily be waived." (Doc. 21) at 16.) While this statement is correct, it overlooks the fact that Defendant both has not waived the applicability of the clause here and has moved to transfer to the prescribed forum. See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 60-61 (2013) (stating that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens" via a 1404(a) motion to transfer venue).

one would expect from an independent agreement", the Basic Agreement's forum selection clause applied); Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 350 (4th Cir. 2001) (stating that, where the dispute itself was under the Letter Agreement but the "Letter Agreement contemplated that the parties would enter into the Distributor Agreement", the Distributor Agreement's arbitration clause applied); Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch, 210 F.3d 262, 265-67 (4th Cir. 2000) (finding that a forum selection clause applied where the breached agreement referenced "rights and remedies" under the agreement containing the clause).

The Security Agreement here is incidental and related to the Management Agreement because: (1) the two agreements were entered into at the same time and relate to the same underlying transaction, (2) the Management Agreement expressly contemplated and required that the parties enter into a Security Agreement to guarantee Plaintiff's payment obligations, (Compl., Management Agreement, Ex. A (Doc. 3) at 26), and (3) the Security Agreement has no independent force or meaning separate from the Management Agreement. The Security Agreement lacks independent force because the term "Secured Obligations" includes items defined only in the Management Agreement and because the Security Agreement incorporates by reference "[a]ll of the terms and

provisions of the Management Agreement."[4] (Def.'s Mem., Security Agreement, Ex. B (Doc. 14-1) at 10.) Therefore, the forum selection clause in the Security Agreement applies to disputes under the Management Agreement (and vice versa).

Plaintiff is certainly correct that the Management Agreement "is a fully formed, standalone agreement." (Pl.'s Supp. Resp. (Doc. 29) at 4.) However, because the claims in this case relate to the alleged conversion of funds and assets that may have <u>secured</u> Plaintiff's obligations under the Management Agreement, it is also patently clear that this dispute "relates to" <u>both</u> the Security Agreement and the Management Agreement. <u>See</u> <u>Drews</u>, 245 F.3d at 350 (finding agreements related and applying the arbitration clause in one agreement to a dispute arising out of the other agreement). The fact that the Management Agreement can stand independently does not preclude application of the forum selection clause; this court finds, alternative to the above analysis, that the instant dispute is

---

[4] The claims in this matter further illustrate the intertwined nature of the two agreements. Plaintiff alleges that Defendant unlawfully converted Plaintiff's property to its own use, (Compl. (Doc. 3) ¶¶ 15-17), but the Security Agreement gives Defendant the right to possess collateral (consisting of certain property belonging to Plaintiff) if an Event of Default occurs. (<u>See</u> Def.'s Mem.. Security Agreement, Ex. B (Doc. 14-1) at 13.) This claim quite clearly "relates to" the Security Agreement.

also sufficiently related to the Security Agreement such that the forum selection clause applies directly. Finally, this court is not swayed by Plaintiff's argument that <u>Drews</u> can be distinguished because of the strong presumption in favor of arbitration. (Pl.'s Supp. Resp. (Doc. 29) at 3.) Rather, the Fourth Circuit's use of arbitration-specific precedent to determine the applicability of a jurisdictional forum-selection clause in <u>Sucampo</u> convinces this court that the legal standard is the same. See <u>Sucampo</u>, 471 F.3d at 551.

As a matter of law, the forum selection clause in the Security Agreement applies to the claims in this case. Neither party has offered any argument to suggest that the narrow grounds for invalidating such a clause are relevant here. Therefore, the Middle District of Florida is a proper venue and the case could have been filed in that court.

### B. <u>Whether a Transfer is in the Interests of Justice</u>

The next step in the analysis, which the Magistrate Judge did not reach, is whether a transfer is "in the interest of justice." 28 U.S.C. § 1404(a). To make this determination, courts ordinarily examine a number of factors bearing on the convenience and appropriateness of adjudicating in each of the two possible forum courts. See, e.g., <u>IHFC Props., LLC v. APA Mktg., Inc.</u>, 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012). However,

where the parties have already agreed on proper venue through a valid forum selection clause, this choice should be "given controlling weight in all but the most exceptional cases." Atl. Marine, 571 U.S. at 63 (quoting Stewart, 487 U.S. at 33 (internal quotations omitted)).

The Supreme Court has counseled that, where there is a valid forum selection clause, the plaintiff's choice of forum and any party-specific convenience factors have no impact on the transfer determination. Id. at 63–64. While courts may still consider public policy concerns, such "factors will rarely defeat a transfer motion." Id. at 64. Because this court sees no grave public policy concerns with transferring this case to the Middle District of Florida, this court finds that Defendant's motion to transfer should be granted. This court declines to address Defendant's motion to dismiss because the case will be transferred, and that motion will be denied as moot.

## V. CONCLUSION

Although the Magistrate Judge's findings were not clearly erroneous, this court finds that the case should be transferred based on a newly-raised argument by Defendant. This court has no authority with respect to this case after it is transferred. Nevertheless, this court notes that the relevant agreements between the parties contemplate a potential award of attorneys'

fees and expenses. (See, e.g., Compl., Management Agreement, Ex. A (Doc. 3) at 37.)  In light of Defendant's motion and briefing practice, this court would find it unreasonable to award attorneys' fees to Defendant for this motions process. This court would, to the contrary, strongly consider awarding attorneys' fees to Plaintiff regardless of the outcome because of Plaintiff's candor in its dealings with this tribunal.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Memorandum Opinion and Order, (Doc. 24), denying Defendant's motion to transfer is **VACATED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Transfer, (Doc. 16), is **GRANTED** and this case is hereby **TRANSFERRED** to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) for further proceedings.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (Doc. 13), is **DENIED AS MOOT,** without prejudice to Defendant re-filing this motion in the transferee court.

This the 21st day of March, 2019.

                                            /s/ William L. Osteen, Jr.
                                            United States District Judge